Good morning, Your Honors. I'm James Pleasance, standing in for Stephen Reekor, who is the one who filed this in the trial court and filed the appeal in the briefs. He wanted me to tell the court he regrets that he can't be here due to a medical reason involving a sudden memory loss. Well, I appreciate you having him here. Tell us what you want to talk to us about. In 2002, the Ilim Church received a Department of Labor employment certification to hire a Romanian-speaking youth pastor for a church made up mainly of Romanian immigrants. Their intention was to hire Mr. Folga, who was then in the U.S. on a student visa. The Department of Labor granted the necessary certification, but despite the church's efforts to file an I-140 work permission, time passed. And Pastor Ovi kind of explained the problems. It's not clear why it didn't get done, but the church was trying. Under the regulation in effect in 2002, the certificate that was issued to them was valid indefinitely. And then in May 2007, the regulations were changed such that a previously issued certification expired in 180 days unless it was submitted with an I-140 during that window of time. The church was not individually notified of this change. The only notice that went out was to the general public in the Federal Register. So why isn't that enough? Well, there I rely on the Chang case. In the Chang case, there was a statute that was passed that affected the rights of the individuals in those cases and potentially also set up a window, a very short window of 60 days in which they could appeal a decision that had been made. There the court in the Ninth Circuit said, that's not enough. You had the addresses of these individuals. You knew who they were. The information was relatively recent. And there they had changed the rule after the immigrants had completed one part of the process but had not completed the second part. And the old rule had given them 24 months to complete the second part. But the new rule said they no longer had the right to pursue permanent residence under the rule in effect when their petitions were granted. So the court found that this was not sufficient notice just to put it in a massive appropriations bill and expect that people would know. The court said the government knew precisely which individuals had their I-829 petitions rejected based on the rules from the precedent decisions. It had done the rejecting. It also had at least relatively current information about how to contact them. And yet it took no steps to notify these individuals that they had no more than 60 days to preserve any possibility of judicial review of their case. The government may not take away such rights without fair notice. And that's a similar situation here. The window that was in the register was a bit longer than 60 days. It was 180 days. But still, it's fundamentally unfair to expect that these individuals would be monitoring the federal register when they had in their possession certificates that, by their terms, said they were indefinite in duration and under the laws in place at the time they were issued. Those certificates could only be revoked with notice, individual notice, under specified grounds, and opportunity to respond. So what do you make of the Second Circuit's decision in durable manufacturing? They seem to say that indefinite doesn't equal permanent. They basically bought the government's position in this case. And therefore, there was no valid expectation of the continued vitality of the labor certificate. Well, I think the Second Circuit was just wrong on that. I think they're wrong. I think they had a strained interpretation of the word indefinite. The common definition of that is for a period of time with no fixed end. And then when you couple that with the fact that there's a specific way to revoke that, and that involves notice and so on, it's reasonable to expect that unless it's revoked, unless someone provides you some notice it's going to be revoked, it continues for an indefinite period of time with no fixed termination. Now, why was there such a long period of time between the approval of the labor certification and the filing of the I-140 period of five, six years? Well, Pastor Ovey does go into that, and that's at the excerpt of records starting at page 60. I don't know if it was a miscommunication between him and his attorneys. I don't really understand exactly what was going on there. The record's not 100% clear. He explains, though, that they were trying. They were intending to do it. They were talking to their lawyers. Lawyers were giving them various bits of advice. They filled out the form I-40. They filled it out again. That's all I can say is, you know, by reference to Pastor Ovey's discussion of what happened. So your position is that once the authorization is obtained, regardless of putting aside for the moment the question of whether it's limited duration or the indefinite one, that personal notice is required before any change can be effected. That's your position? Yes. You know, if the department has their addresses, which they did in this case. And how many such people do we know? Does the record reflect how many such people would be affected by it? I don't believe the record does reflect that. I don't know how many. It would probably be a fair number. I would assume. But nevertheless, you know, it's an important right that people thought they had, which is being taken away. Well, it wasn't taken away. There was just an expiration date put on it. Well, that was – and that's similar to Chang. There was a 60-day window. We had a 180-day window. But if you didn't know about that window, it wasn't of much use to you, and that was the case. And, of course, this notice is – I think you'd agree, whether it's adequate or not is one thing, but it was certainly better than what was involved in the Chang case. Well, not substantially better. I mean, the Chang case, it was a statute, and the provision of the statute was published as a law. It happened to be a very large piece of legislation, the budget, but it was there for those who were looking for it. But that's the key thing, is in that case the court felt that the right was significant enough and the expectation was reasonable enough that it shouldn't be taken away without individualized notice. Well, it is true, but Chang took some pains to say it was one sentence in an appropriations bill versus a public announcement. I can see that there's a difference there, but, you know, again, your average person doesn't read the Federal Register every day. And if you've got – Your average judge doesn't read the Federal Register every day. That's a fair point. Now, the whole purpose of the labor certification is based on the fact that it's issued after a determination is made that there aren't sufficiently qualified workers to fulfill that profession or employment. And so doesn't that lend support for the notion that it's not an indefinite period of time? Because a determination has to be made that there aren't enough workers, right? Well, that's true under the new law because those certifications only last 180 days. And so you have to more or less go back and say, we're still in a situation where we need to hire an alien worker. But under the law in 2002, they lasted indefinitely. And so I would guess under that law it was presumed that if there was a shortage at the time that the certificate was granted, that shortage stayed in effect unless there was some revocation of it. And so the law changed. There's no question about that, but our issue is, should the new law be applied retroactively to the certificates set by their terms or indefinite in duration? I think we have your argument at hand if you want to say something. I will. Thank you. Good morning, and may it please the Court. My name is Arnum Gavore, and I represent the federal government defendants' appellees in this appeal from the Western District of Washington. This Court should affirm in its entirety the decision by the District Court to grant summary judgment to defendants' appellees in this action, specifically because the Department of Labor's Regulation 8 CFR Section 656.30B was not impermissibly retroactive and because it was passed through proper notice and comment rulemaking procedures. Before I get into my argument in earnest, I'd like to address three points raised by my colleague in his presentation. First, the point that he's making about expiration. Expiration does not equate to revocation. There's a very big difference here. In this circumstance, the regulation at hand identifies an expiration period. There is no revocation of labor certs at all taking place here. Now, this is very important when it comes into notice and comment and with the question of individual notice. Well, there was a revocation of the indefinite grant. Your Honor, the government respectfully disagrees, merely an identification for an end period. Using the durable manufacturing language, there is a coextensive relationship between any right that a Lem Church of God may have had in having a labor certification in 2002 and the identification of an expiration period to close off the indefinite nature. Indefinite does not mean forever. I don't know. What does it mean if it doesn't mean? Well, if indefinite doesn't mean definite, we know that. Well, Your Honor, the district court used the reasonable person standard and so also took into account what every other district court or circuit has considered on this question. Adopting the Durable Manufacturing Analysis, Webster's Dictionary, Third Edition, 2002, which was active at the time where a Lem Church of God filed for its labor certification on behalf of Romeo Folga, the term indefinite means having no exact limits, indeterminate in extent of amount, not clearly fixed. Thus, indefinite does not mean forever. Oh, but it doesn't mean definite. It doesn't mean a limited time. I mean, the reason I say that is I understand the argument that really you didn't think this was going to last several centuries. On the other hand, I think if you're a lawyer representing someone and you get a labor certificate and it says indefinite, the question is when do you have to file your I-140? And the answer is there's no time limit. And so to me the only question, I mean, I appreciate what the Second Circuit said, but I don't think somebody has a reasonable expectation that an indefinite period will become definite simply by the language of indefinite. Well, Your Honor, allow me to first at least complete the comments for my colleague's statement. So first, with regard to individualized notice, only for revocations is there a regulatory requirement for individualized notice. And for this particular type of issue, I'd like to draw the Court's attention to the Administrative Procedure Act 5 U.S. Code, Section 553b through d, and 552a1d, which specifically identifies in the statute the scope of this Court's review that notice is properly affected through publication in the Federal Register. Secondarily, I'd like to identify 44 U.S.C. Section 1507, which statutorily construes that constructive notice is appropriate in the Federal Register. I grant you all that. How do you deal with Chang? I mean, if you were to say Chang is distinguishable because, tell me. Consistent with the government's briefing, Chang is distinguishable for three reasons. First, the offending language, the offending issue in Chang was not the statute itself, but an interpretive decision issued by the Immigration and Naturalization Service to deal with these EB-5 investor visas. And that is very different because that was an interpretive decision, whereas here we have notice and comment public rulemaking. Secondarily, in Chang, there was no notice and comment rulemaking. And third, there was a new exhaustion requirement. Fourth, and this is not directly on the law but on the facts, specifically for this particular type of labor certification, it is grossly impractical and burdensome for the government to have affected individualized notice. How big of a group are we talking about? Do you have any idea? Yes, Your Honor. In the government's brief and a footnote, in 2007, the Department of Labor processed over 234,000 labor certifications. The visa construed in Chang, at least in 2009, and that's contained in the briefing as well, was only 437 I-829 investor visas. So we're having very, very big differences in the numbers within the time period as well, so I suppose that's a fifth basis to distinguish Chang. Here we had a proposed rule that was published in the Federal Register on February 13, 2006. A final rule, May 17, 2007, with an effective date on July 16, 2007, which essentially identified an expiration period for a limb Church of God's labor certification, all the way in January of 2008. So you have almost a two-year period where there was public notice that was given, very different from Chang, where it was 60 days. So on these five different bases, the government submits that Chang is not applicable in this case, and indeed this court should follow what's been laid out by the district court and in the government's briefing in following step two of the Landgraf test. Because the Congress has not expressed or commanded in its language for the agency to promulgate rules with retroactive effect, the question to determine whether there is a retroactive effect goes to step two. And as this court interpreted Mejia in so adopting St. Cyr, or at least the application of St. Cyr, the judgment of whether a regulation is impermissibly retroactive should be informed and guided by, I quote, The government submits that on all three of these bases, individually and severally, a limb Church of God cannot demonstrate that this regulation was retroactive, either directly or in secondary effect. First, with regard to fair notice, I have identified several bases upon which there was fair notice. For mine, the court, notice and comment rulemaking was set forth. The Department of Labor followed the rules here, enacting a prospective rule. There was a proposed comment. There was a final rule. Two months after that, there was the effective date. And then 180 full days after the effective date was the indefinite terminology identified with an expiration date. Did that come to pass? Secondarily, in light of this notice, there's no reasonable basis for reliance on the continued validity of this labor cert. The regulation did not, quote, impose a new disability consequent to a completed act. And if the court would look at the enacting statute from which the regulation comes forth, as the Seventh Circuit identified in durable manufacturing, this promulgation of the regulation merely brings the regulatory scheme within the ambit of the requirements of the statute. And that statute's 8 U.S.C. Section 1182A5A. And that textual mandate states very clearly that for the Department of Labor, its job is to identify four things, that workers through labor certs are able, willing, qualified, and available at the time of the visa petition. That's very important because here, the previous regulation was very, very different. It wasn't fully enacting the statutory mandate by Congress. The new regulation, allowing a 180-day prospective period, as applied to Willem Church of God, does allow that to take place. Well, I think the reason that they had the other statute is that the agencies aren't getting their work done in a timely fashion, and they wanted to have a little play in the joints. That's entirely possible, but not something I'm going to opine on. But certainly now, in 2007 and certainly after 2007, the agency is capable and actively monitoring the situation. And specifically, if the court takes notice, the record also, but of the Federal Register, it does state that this is one of the main reasons of two why this regulation was being promulgated. The second one was because the Department of Labor had identified that a black market had emerged for labor certifications, where they were essentially being traded and sold to the highest bidder. And that's not the reason why this regulation exists. That was really the primary motivation for the change, wasn't it? Yes. And specifically, this regulation is designed to protect the American workforce. Yes, but nobody's accusing the Church of – who really, for whatever reason, just wasn't getting their I-140 in. Of engaging in black market activities. Certainly, it's not identifying the Church. And if the question of equitable estoppel comes to play, a limb Church of God has not identified any affirmative malfeasance on the part of the government such to merit a question of equitable estoppel. But nonetheless, specifically for a limb Church of God, yes, is it unfortunate that they did not file their I-140 in a timely manner? Certainly.  Well, given the number of people affected, have you encountered, and you may not know this, this is certainly outside the record, but do you have people coming back, trying to get their labor certifications renewed, or do they start the process of applying for another labor certification?    How does it work when you're buckling down? Because you don't read the federal register. Well, Your Honor, when an entity has a labor cert that's expired, they merely need to apply for another one. Well, you say merely. I mean, I've been through that process. Merely is not a phrase that one would use. You can't go to the state, you can't go to the feds. It can take six months to a year. It's a cumbersome process. Your Honor, it is a process, but it's an important process that exists. And if I may identify to essentially aid Judge Wynn's inquiry, this is one step of three for the process of actually getting an alien worker to the United States to work. Thus, there's no completed transaction, at least that a limited church of God can identify, that would be detrimented to any extent, even through direct or indirect retroactive effect. First, the process of obtaining employment certification starts with that labor cert. The question that's before this Court now. However, once that labor certification exists, step two is what a limited church of God was incapable of doing because of the expiration. I-140. Correct. But now that they've blown the deadline, nothing prevents them from going back and going through the whole rigmarole, however burdensome it is again? You're correct. At least nothing within the record, nothing within my personal knowledge, would preclude that. So the process remains open. The process merely is, or I'm sorry, I will not use the word merely, is a three-step process and filing that labor cert needs to happen again. And that's reasonable because the statute itself remains unchanged and the statute is rather firm on this at the time of the application for the visa. That's very important. The Department of Labor couldn't effectively, or is more effectively, seeing through its statutory mandate, its duty commanded by Congress, by having this reasonable 180-day period. It went out of its way and made very clear to directly make this a prospective, exclusively prospective regulation. If the Court does not have any further questions, the government rests on its briefs and asks the Court to affirm in its entirety the Western District of Washington's grant of summary judgment. Thank you, Counsel. Thank you. We have to remember in this case that the Washington Administrative Procedure Act, and the Court found this also, does not allow retroactive regulations. So the real question is whether this is a retroactive regulation, and this is where we feel that the trial court erred in their finding. It's retroactive because it reaches back and affects certificates and the rules surrounding the certificates that had been issued before the rule was promulgated. And there are several additional cases that are worth looking at from the Ninth Circuit. Maserin was one that we discussed. That's where Mr. Maserin, with all the labor certification, he got his labor certification, but he was not able to apply for a visa for two years because of a backlog of Philippine citizens. And during that period where he was waiting to apply for his visa, the Department of Labor issued a rule that had the effect of making his labor certification invalid. And the Court declined to give that rule a retroactive effect. Now, the facts were somewhat more severe in that case because the Department of Labor regulation was also found to be contradictory. But the Court talked about the balancing of the statutory interest, and the statutory interest there in the Maserin case is the same as here, which is that of protecting the American economy from job competition. And the Court found that the congressional purpose was not substantially enhanced by requiring the regulation to apply retroactively to labor certificates previously issued. And that's the case as well here. The congressional purpose is not substantially enhanced by going back and applying the new rules to the old certificates. Well, except that to the extent that one wants a snapshot of the labor market at the time the visas acted upon, a stale labor certificate doesn't provide the agency that opportunity. Yes, but you have a labor certificate. You have openings in the labor market, and the labor market changes. Well, that part is true enough, but that certainly doesn't apply in our case. Well, let me ask you about your case, if you don't mind. I mean, I know this outside the record, but have you filed a new labor certificate or you're just waiting the outcome of this case before you take the next step? No, I'm afraid I can't answer that because I'm standing in for someone else, and I simply don't know. And what is the immigration status of the assistant pastor or whoever the person you want to employ? Do you know? That I don't know either. I know that he at various times had student visas. He was doing his ministry studies. I guess my question was whether he was still in status or not, and you may or may not know. I honestly don't know. Because this could have the effect, I suppose, of four seconds removal from the United States. It's possible. Counsel for the department discussed the Major case, and in Major the court found no retroactive effect where both the new and the old regulation were virtually the same. Both granted a great deal of discretion to the judge. They just used slightly different language as to whether there was an ability to grant a waiver of admissibility. And the court also found in that case that Congress had intentionally been given very broad discretion to the attorney general to apply both the new and the old law. So there was no upsetting of reasonable expectations. That's the heart of the matter is the upsetting of reasonable expectations that people make based on the rules and affect the time that they apply for this certificate. And, of course, that reasonable expectation could have been overcome by giving individualized notice. We're changing the law. You have 180 days. That was not done. And it was disruptive to the expectations that they had based on the language of the certificates themselves, saying they were indefinite in nature. And it would be unreasonable to think that that was suddenly going to go away unless someone notified you of that. Thank you. Thank you very much for your argument. The case history will be submitted. Thanks for coming out from Washington, and thanks for standing in at the last minute. I know that's always difficult.
judges: Dearie, Thomas, Nguyen